[No. 5997.   Decided February 23, 1906.]

MERCHANTS BANK OF PORT TOWNSEND, *Appellant,* v.
SUPERIOR CANDY & CRACKER COMPANY,
*Respondent.*[1]

MONEY RECEIVED—MISTAKE—ELECTION—NOTE FROM ONE OBLIGOR— JOINT LIABILITY—ESTOPPEL. Where by mistake a bank book belonging to a depositor in a bank came into the possession of another party of the same name, who had no right thereto, and the bank by mistake paid the amount of the deposit to such other party, who subsequently paid over part of the money to a corporation whose officers had full knowledge of the mistake, the bank may recover such money from the corporation, and the fact that the bank had taken a note from the party to whom the same had been first paid, and had undertaken to collect the same from such party, would not amount to an election to accept him as the sole creditor, or estop the bank from collecting from the corporation the portion of the money which it had received.

Appeal from a judgment of the superior court for King county, Albertson, J., entered April 8, 1905, upon findings in favor of the defendant, after a trial on the merits before the court without a jury, in an action to recover money received by mistake. Reversed.

*Emmons & Emmons* and *H. T. Granger,* for appellant.

*Harrison Bostwick,* for respondent.

1Reported in 84 Pac. 604

Root, J.—Appellant is a banking corporation, doing business at Port Townsend. Respondent is engaged in the wholesale candy and cracker business at Seattle. One George Blake, residing at or near Center, in Jefferson county, had on deposit in appellant's bank $365.60. One George W. Blake and wife, formerly living in the vicinity of Center, have for several years resided at Bellingham, where they were engaged in business, and were in March, 1903, indebted to respondent in the sum of $225, for goods, wares, and merchandise theretofore purchased. In March, 1903, appellant bank balanced the pass book of George Blake, showing a balance of $365.60 to his credit, and forwarded said book by mail to him at Center. For some reason not disclosed, the postmaster, instead of delivering the book to George Blake, forwarded the same to Bellingham, where it was received through the mail by Mrs. George W. Blake. The latter examined the book without first informing her husband of its receipt, and found that it showed deposits of small sums from time to time during the years 1901, 1902, and 1903, and also found in the book a return check which had been drawn by George Blake upon his account and paid by the bank. Mrs. George W. Blake conceived the idea that her husband, without her knowledge, had been drawing small sums from their business and depositing the same in this bank. She said nothing at this time to her husband about the matter.

Shortly thereafter one Foster, the president of the respondent company, went to Bellingham and urged Mrs. Blake to pay the amount due his company. She pleaded her inability to pay, and showed Mr. Foster this pass book, and told him of her suspicions about her husband taking money from their business. Foster and Mrs. Blake then interviewed her husband George W. Blake, and exhibited to him the pass book, and charged him with withdrawing money from the business and secreting it in this bank, and insisted upon his using this money to pay the debt due the candy company. George W.

Blake protested that the charge was unfounded; that he had no money in the bank, and that the pass book did not belong to him; that he had never seen it before, and that he had no dealings whatever with the bank. Foster by his insistence seems to have convinced said Blake that he had money in said bank.

It seems that Blake's mother-in-law, some years before, had given some intimation to the effect that she would make Blake's son, whose name was George Blake, one of her heirs; and George W. Blake, under the influence of the argument of Foster and Mrs. Blake, strengthened by the presence of the pass book, was led to believe that perhaps some money might have been left at the bank by his mother-in-law for his son; and at the instance of Foster and his wife, drew a draft on the appellant bank for $365.60. He was then at the bank of Whatcom in company with Foster, and the draft was presented to Mr. Post, the cashier of the bank just mentioned. Mr. Post sent a telegram to the appellant bank, asking if the draft was good. As received, the name in the telegram read "J. W. Blake." The appellant bank replied by telegraph that it had no such account. Foster then took the pass book and went to Port Townsend, and showed the appellant bank the pass book, and asked why it had sent such a telegram. The cashier of appellant bank called Foster's attention to the fact that the pass book was in the name of "George Blake," while the name in the telegram was "J. W. Blake." Shortly thereafter George Blake, the son of George W. Blake of Bellingham, sent a telegram to the appellant bank, instructing it to forward to the bank at Bellingham any money due him. Appellant bank, supposing this telegram to have come from their depositor George Blake, forwarded the entire deposit to the bank at Bellingham. Shortly thereafter Foster visited Bellingham, and received from George W. Blake a check for $225, in payment of the amount due from George W. Blake and his wife to respondent company. This check was paid to Mr. Foster out of the money

sent by appellant bank to the bank at Whatcom. Said Blake, also, out of the same fund, paid Foster $75 for goods which Mrs. Blake had ordered a month or so prior. Some time thereafter the appellant bank discovered that it had paid this money to the wrong person, and was required to pay to George Blake, of Center, the money due him. One Strong, the cashier of appellant bank, went to Bellingham and took from George W. Blake a note for the amount which had been paid by mistake as aforesaid, and undertook to collect from the candy company the amount which had been paid to it out of this fund. Foster had given George W. Blake a receipt for $300. Strong arranged with said Blake to place this receipt in the hands of the Whatcom bank, to be surrendered to the candy company if the latter returned the money to appellant. Respondent refused to pay the money back. Thereafter George W. Blake or wife made payments aggregating $40 in amount upon said note. This action was brought to recover $300 received by respondent as aforesaid. Trial was had before the court without a jury. Findings of fact and conclusions of law were made and entered favorable to respondent, and a judgment in its favor entered. From this judgment an appeal is taken.

It is the contention of the respondent that the appellant, by taking the note from George W. Blake and receiving payments thereupon, thereby elected to accept him as its debtor, and that it must consequently look solely to him. We cannot uphold this contention. The fundamental fact in this case is that the respondent received $300 of appellant's money for which the latter has received no consideration whatever. It received the same as the result of mistake on the part of appellant. We can see no reason in law or morals why the respondent should be permitted to hold this money. Respondent's president was present when the pass book was first called to the attention of George W. Blake, and heard the latter's statement that the book was not his; that he had no money in that bank; that he had never done business there.

Foster knew, or was in a position to have ascertained, every fact and circumstance connected with the transfer of this money. His knowledge, of course, is imputed to the respondent company, of which he was president. It is perfectly apparent that he and his company had no good reason to believe that the money belonged to George W. Blake or wife. That the pass book was in the name of George Blake, and that it contained a check with the signature of George Blake of Center, were in themselves sufficient facts to have put Foster and his company upon inquiry that would readily have informed them as to the ownership of this money.

The judgment of the honorable superior court is reversed, and the cause remanded with directions to enter judgment in appellants favor, in the sum of $300, and costs.

MOUNT, C. J., DUNBAR, CROW, HADLEY, and FULLERTON, JJ., concur.